**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOHN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **J. ALEXANDER'S** | ) | |
| **RESTAURANTS, LLC,** | ) | _____ |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

### INTRODUCTION

Plaintiff, John Smith, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the J. Alexander's environment to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendant's failure to design and construct the establishments to be readily accessible to and usable by individuals with disabilities.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original

jurisdiction under 28 U.S.C. §1331 and §1343.

2.    Venue is proper in this Court, the United States District Court for the Western District of Tennessee, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Western District of Tennessee.

3.    Plaintiff, John Smith, was diagnosed with diabetes forty-one years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Mr. Smith requires a wheelchair for mobility as a result of these amputations. The extent of Mr. Smith's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Mr. Smith is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.    Defendant, J. Alexander's Restaurants, LLC, (hereinafter "J. Alexander's"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Tennessee sufficient to create both general and specific in personam jurisdiction. Upon information and belief, J. Alexander's Restaurants, LLC, "operates" and "leases" the Redlands Grill restaurant located at 2670 N Germantown Pkwy, Memphis, TN 38133 and the Stoney River restaurant located at 7515 Poplar Ave #101, Germantown, TN 38138. 42 U.S.C. § 12182. The Redlands Grill and Stoney River restaurants are commercial facilities in that the units are intended for nonresidential use and affect commerce. 42 U.S.C. § 12181(2)((A).

Moreover, they provide boutique restaurants that focus on providing high quality food, outstanding professional service and an attractive ambiance to the public, which qualifies Redlands Grill and Stoney River as places of public accommodation pursuant to 42 U.S.C. § 12181(7).

5.  All events giving rise to this lawsuit occurred in the Western District of Tennessee and the Defendant is a citizen thereof.

6.  Plaintiff John Smith, is a resident of Muscle Shoals, Alabama. He enjoys taking weekend vacations in Memphis, Tennessee, at least once or twice a year. While vacationing in Memphis, Mr. Smith shops, eats, and enjoys the variety of entertainment at and around Wolfchase Galleria and Shops of Saddle Creek where the Redlands Grill and Stoney River restaurants, which are the subjects of this action, are located. Mr. Smith frequently goes to the Wolfchase Galleria and the Shops of Saddle Creek shopping centers in which the Redlands Grill and Stoney River restaurants are located. He has been to each restaurant at least twice so far. Mr. Smith intends to continue going to Redlands Grill and Stoney River again, because he wants to enjoy their boutique-style restaurants that focus on providing high quality food, outstanding professional service and an attractive ambiance. He will return not only to eat, but to also confirm compliance with the ADA by Redlands Grill and Stoney River. Mr. Smith does not know exactly when he will go back to the Defendant's restaurants, because he has not planned out every meal for the rest of his life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's*

*Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Nevertheless, Mr. Smith definitely intends to return to both Redlands Grill and Stoney River and plans to continue going to both even after the restaurants are repaired and the improper practices modified.

7.  Because of the barriers described below in paragraphs 20, 21 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8.  Plaintiff accordingly, has Article III standing to pursue this case because (1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's restaurants are places of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury, by being denied access to Redlands Grill and Stoney River by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of Redlands Grill and Stoney River for his full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 18.

## (1)    PLAINTIFF'S CLAIMS

**ADA, Title III**

9.    On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10.    Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishments are places of public accommodation in that they are boutique restaurants that focus on providing high quality food, outstanding professional service and an attractive ambiance to the public. Accordingly, they are covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

**Defendant's Existing Facilities Are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in This Complaint**

11.    Plaintiff is informed and believes based on publicly available information that the building in which Redlands Grill is located at 2670 N Germantown Pkwy, Memphis, TN 38133 was constructed in 2012. Plaintiff is informed and believes based on publicly available information that the building in which Stoney River is located at 7515 Poplar Ave #101, Germantown, TN 38138 was constructed in 2015.

12. Plaintiff is further informed and believes based on publicly available information that the Redlands Grill restaurant located at 2670 N Germantown Pkwy, Memphis, TN 38133 underwent alterations and/or improvements after 2012. Plaintiff is informed and believes based on publicly available information that the Stoney River restaurant located at 7515 Poplar Ave #101, Germantown, TN 38138 underwent alterations and/or improvements after 2015.

13. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.

42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs

on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

16. The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Redlands Grill and Stoeny River in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's establishments. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this

Complaint which remain at the establishments in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18. Plaintiff has definite plans to return to Redlands Grill and Stoney River in the future, as described in paragraph 6. Plaintiff will return to Redlands Grill and Stoney River in both Fall 2018 and Spring 2019 both to eat and enjoy the boutique restaurants that focus on providing high quality food, outstanding professional service and an attractive ambiance, and to see if Redlands Grill and Stoney River have repaired the barriers, and changed their practices and procedures. Plaintiff will continue to do so even when Redlands Grill and Stoney River are repaired, because they are enjoyable places, after all. Mr. Smith certainly would not want to stop going when Redlands Grill and Stoney River are repaired and their practices are modified; that is all the more reason to go. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendant's workers at the establishments use the physical architectural elements of the facilities. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held in _Houston v. Marod Supermarkets_, 733 F.3d 1323 (11th Cir. 2013),

when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when plaintiff returns to the store.*" Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishments, there exists a genuine threat of imminent future injury.

## Architectural Barriers

19.   Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20.   Plaintiff has been from the entrance to the hostess counter; from the hostess counter to the bar area; from the bar area to the dining area; from the dining area to the restrooms; the restrooms themselves, throughout circulation paths and accessible routes, service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 2670 N Germantown Pkwy, Memphis, TN 38133, more commonly known as "Redlands Grill", violates the ADA in the bar area, dining area, restroom, and in particular but not limited to:

   A.   Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public

accommodation which includes but is not limited to the following failures of Defendant:

**(1)**   There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)**   There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)**   There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)**   There is not at least 5% of the seating spaces and standing spaces at the indoor bar area hat are maintained in operable condition with the

ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

B.   Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes standard booth dining surfaces and standard table dining surfaces for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

(1)   There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**C.** Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the outdoor dining area for able-bodied individuals, but fails to maintain that same level of service to

individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the outdoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the outdoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the outdoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

      **(4)**    There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the outdoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**D.**    Defendant provides a hostess counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

      **(1)**    There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services offered at the counter as unusable by disabled individuals;

(2)   There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and it's associated elements are located adjacent to a walking surface complying with 403;

(3)   There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

(4)   There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory

effects of rendering the counter and its associated benefits and services as unusable by the disabled;

**(5)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

**(6)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(7)** Defendant fails to maintain the accessible features of the hostess counter that are required to be readily accessible to and usable by individuals with disabilities;

**E.** Defendant provides seating benches for able bodied individuals to sit, lounge, and wait on a table but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities;

(1)    Defendant fails to provide a seating bench that meets the minimum required length of 42 inches long;

(2)    Defendant fails to provide a seating bench that meets the required height of 17-19 inches above the finished floor;

(3)    Defendant fails to provide a seating bench that is 20 inches deep minimum and 24 inches deep maximum;

(4)    Defendant fails to provide a seating bench that has back support and/or is affixed to a wall;

(5)    Defendant fails to provide a seating bench that provides the required 30x48 inches of clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

F.    Defendant provides a restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1)    The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all

the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2)   There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3)   The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach to the compartment and otherwise maintained in the condition required by the ADA Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

(4)   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top

of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)**   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)**   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)**   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that

the toilet compartment maintains a toilet compartment door and its associated hardware in an accessible and usable condition by the disabled;

**(11)** Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities.

**G.** Defendant provides a lavatory in the restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The lavatory fails to be maintained conformance with the ADA Standards for Accessible Design in all the ways that are required to be

readily usable by disabled individuals which includes maintaining the required clear floor space including its associated knee and toe clearance under the sink and otherwise maintained in a condition so that the lavatory pipes are insulated or otherwise configured in a way to protect against contact;

(4)     The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

(5)     There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

(6)     There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

21.     Plaintiff has been from the entrance to the hostess counter; from the hostess counter to the bar area; from the bar area to the dining area; from the dining area to the restrooms; the restrooms themselves, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 7515 Poplar Ave #101, Germantown, TN 38138, more commonly known as

"Stoney River", violates the ADA in the bar area, dining area, restroom, and in particular but not limited to:

**H.**   Defendant provides an accessible entrance for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **(1)**   Defendant fails to maintain at least one accessible entrance that provides a door conforming to the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining an independently accessible and usable entrance door to the establishment so that disabled individuals are not outright excluded from being afforded the opportunity to enter the establishment;

    **(2)**   Defendant fails to maintain an accessible route to the entrance of the tenant space, in operable condition by conforming with the ADA Standards for Accessible Design so that Revolving doors and turnstiles are not part of the accessible route which has the discriminatory effects in practice of rendering the entire establishment and its goods and services as unusable by disabled individuals;

        **(3)**    Defendant fails to maintain a usable entrance that conforms to the ADA Standards for Accessible Design so that disabled individuals are out right excluded from entering the establishment entirely;

**I.**    The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**J.**    The floor mats throughout the establishment are not stable, firm, or otherwise secured to the floor;

**K.**    Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor bar for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

        **(1)**    There is not at least 5% of the seating spaces and standing spaces at the indoor bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor bar area seating spaces and its associated elements as unusable by disabled individuals;

**(2)**    There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)**    There is not at least 5% of the seating spaces and standing spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

**(4)**    There is not at least 5% of the seating spaces and standing spaces at the indoor bar area hat are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**L.**    Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor seating area which includes high top dining surfaces, standard booth dining surfaces and standard table dining surfaces for able-bodied individuals, but fails to maintain that same level of

service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

**(1)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals;

**(2)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

**(3)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear

floor space that is positioned for a forward approach to the dining surface;

**(4)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment;

**M.** Defendant provides a hostess counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** There is not at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated

elements, and services offered at the counter as unusable by disabled individuals;

**(2)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter and it's associated elements are located adjacent to a walking surface complying with 403;

**(3)** There is not  at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

**(4)** There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which

includes but is not limited to maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effects of rendering the counter and its associated benefits and services as unusable by the disabled;

(5) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that accessible counter extends the same depth as the non-accessible portion of the counter;

(6) There is not at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in a readily accessible to and independently usable location at the accessible counter which has the discriminatory effects in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

(7) Defendant fails to maintain the accessible features of the hostess counter that are required to be readily accessible to and usable by individuals with disabilities;

N. Defendant provides seating benches outside for able bodied individuals to sit, lounge, and wait on a table but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege,

advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities;

    **(1)**   Defendant fails to provide a seating bench that meets the minimum required length of 42 inches long;

    **(2)**   Defendant fails to provide a seating bench that meets the required height of 17-19 inches above the finished floor;

    **(3)**   Defendant fails to provide a seating bench that is 20 inches deep minimum and 24 inches deep maximum;

    **(4)**   Defendant fails to provide a seating bench that has back support and/or is affixed to a wall;

    **(5)**   Defendant fails to provide a seating bench that provides the required 30x48 inches of clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

**O.**   The ADA signage identifying the restroom fails to be maintained in conformance with the ADA Standards for Accessible Design so that the signage is located alongside the restroom door at the latch side;

**P.**   Defendant provides a restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1)   The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled;

(2)   There is not at least one toilet compartment that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including the maneuvering clearance to approach the compartment, clear floor space at the compartment door, and among other associate design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled;

(3)   The restroom fails to be maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right-hand approach to the compartment and otherwise maintained in the condition required by the ADA

Standards for accessible Design so that the toilet compartment and its associated elements are not rendered unusable by the disabled;

**(4)**   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals;

**(5)**   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled;

**(6)**   The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the side wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by

disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor;

**(7)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the rear wall grab bar conforms with the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

**(8)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the water closets flush control valve mains operable compliant hardware or otherwise located on the openside of the water closet;

**(9)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition by conforming with the ADA

Standards for Accessible Design so that the toilet paper dispenser's operable parts comply with the applicable standards for accessible design and is otherwise located 7-9 inches from the front of the water closet;

**(10)** The restroom fails to maintain at least one ADA Accessible toilet compartment in operable condition or otherwise configured in away by conforming with the ADA Standards for Accessible Design so that the toilet compartment maintains a toilet compartment door and its associated hardware in an accessible and usable condition by the disabled;

**(11)** Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities.

**Q.** Defendant provides a lavatory in the restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the

discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

**(3)** The lavatory fails to be maintained conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily usable by disabled individuals which includes maintaining the required clear floor space including its associated knee and toe clearance under the sink and otherwise maintained in a condition so that the lavatory pipes are insulated or otherwise configured in a way to protect against contact;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper;

**(5)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

**(6)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands

to operate and/or require tight grasping, twisting, and/or pinching of the wrist;

22. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

24. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facilities to make them readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facilities until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*
**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

25. Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

26. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42

U.S.C. § 12182(a)(1) (emphasis added).

27.     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens."  See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).


28.     Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."  42 U.S.C. § 12101(a)(5).

29. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

30. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

31. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the

privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in _Rendon v. Valleycrest Prod., Ltd_. 294 F.3d 1279, (11th Cir. 2002) that:

> "_A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendant entity's goods, services and privileges._"

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

32.    Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "_a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations_."

33.    Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that

"has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offer to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

34.   As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35.   Defendant either has no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36.   Defendant's use of its establishment, and its practices at the establishment located at 2670 N Germantown Pkwy, Memphis, TN 38133, literally creates barriers and in so doing denies Plaintiff the full and equal enjoyment of Redlands Grill. Those practices

include:

    **a)**  Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the J. Alexander's Redlands Grill contemporary American, high quality dining experience;

    **b)**  Defendant makes its bar counter seating inaccessible for use by the disabled by failing to provide a bar counter that conforms to the ADA design standards, which means Plaintiff cannot fully and equally order drinks at the bar, enjoy happy hour at the bar counter, watch sporting events on the TV's at the bar, view the on-tap beer selection, view the outstanding selection of wines, or any other benefit or service provided at the bars in the same way the non-disabled do, because the non-disabled have bar counters they can use to receive and enjoy all of the goods and services offered at Redlands Grill;

    **c)**  Defendant fails to provide ADA accessible seating tables in the indoor seating areas, which means Plaintiff cannot use or dine in the indoor seating areas like non-disabled individuals can;

    **d)**  Defendant fails to provide ADA accessible seating tables in the outdoor

seating area, which means Plaintiff cannot use or dine in the outdoor seating area like non-disabled individuals can;

**e)** Defendant makes the hostess counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Smith cannot fully and equally use the counter to be seated at a table in the way the non-disabled do, because the non-disabled have a hostess counter they can use to be seated at a table;

**f)** Defendant makes its bench seating in the waiting area inaccessible for use by the disabled by failing to provide ADA accessible seating in the waiting area, which means Mr. Smith cannot fully and equally use the waiting area and all its goods, services, and elements to sit and relax while waiting on a table;

**g)** Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

**h)** Defendant fails to provide a place for the disabled both to sit and eat like able-bodied people can;

**i)** Defendant makes its "unique" high-end upscale environment inaccessible for the disabled so that Defendant might as well hang a sign saying disabled people not welcome;

**j)** Defendant, according to its own publicly available information, lacks any policies, practices, and/or procedures that ensure the "use" of its allegedly compliant facilities comply with the ADA;

**k)** Defendant's current practice, based on its own company annual SEC 10-K filings, is to make a bold assertion that it "*may in the future have to modify restaurants by adding access ramps or redesigning certain architectural fixtures, for example, to provide service to or make reasonable accommodations for disabled persons. The expenses associated with these modifications could be material*" in an attempt to avoid having to make alterations to their facilities until demanded by the disabled;

**l)** Defendant's current practice, based on its own company annual filings, is to disregard ensuring its business policies, practices and procedures ensure compliance with the ADA, in an attempt to avoid making its services accessible to the disabled;

**m)** Defendant's current practice, based on its own company annual filings, is to make a bold assertion that it intends to comply with future regulations and may have to modify restaurants in the future by adding accessibility features;

**n)** Defendant's corresponding practice stated directly above is to outright deny any responsibility to make modifications to practices and policies as well as repairs to barriers, unless demanded by the disabled;

**o)** Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

37.  Defendant's use of its establishment, and its practices at the establishment located at 7515 Poplar Ave #101, Germantown, TN 38138, literally creates barriers and in so doing denies Plaintiff the full and equal enjoyment of Stoney River. Those practices include:

a)  Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Stoney River contemporary American, high quality dining experience;

b)  Defendant makes its bar counter seating inaccessible for use by the disabled by failing to provide a bar counter that conforms to the ADA design standards, which means Plaintiff cannot fully and equally order drinks at the bar, enjoy happy hour at the bar counter, watch sporting events on the TV's at the bar, view the on-tap beer selection, view the outstanding selection of wines, or any other benefit or service provided at the bars in the same way the non-disabled do, because the non-disabled have bar counters they can use to receive and enjoy all of the goods and services offered at Stoney River;

c)  Defendant fails to provide ADA accessible seating tables in the indoor

seating areas, which means Plaintiff cannot use or dine in the indoor seating areas like non-disabled individuals can;

d) Defendant makes the hostess counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Smith cannot fully and equally use the counter to be seated at a table in the way the non-disabled do, because the non-disabled have a hostess counter they can use to be seated at a table;

e) Defendant makes its outdoor bench seating inaccessible for use by the disabled by failing to provide any ADA accessible outdoor bench seating, which means Mr. Smith cannot fully and equally use the outdoor bench seating and all its goods, services, and elements to sit and relax while waiting on a table;

f) Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

g) Defendant fails to provide a place for the disabled both to sit and eat like able-bodied people can;

h) Defendant makes its "unique" high-end upscale environment inaccessible for the disabled so that Defendant might as well hang a sign saying disabled people not welcome;

i)   Defendant, according to its own publicly available information, lacks any policies, practices, and/or procedures that ensure the "use" of its allegedly compliant facilities comply with the ADA;

j)   Defendant's current practice, based on its own company annual SEC 10-K filings, is to make a bold assertion that it "*may in the future have to modify restaurants by adding access ramps or redesigning certain architectural fixtures, for example, to provide service to or make reasonable accommodations for disabled persons. The expenses associated with these modifications could be material*"  in an attempt to avoid having to make alterations to its facilities until demanded by the disabled;

k)   Defendant's current practice, based on its own company annual filings, is to disregard ensuring its business policies, practices and procedures ensure compliance with the ADA, in an attempt to avoid making its services accessible to the disabled;

l)   Defendant's current practice, based on its own company annual filings, is to make a bold assertion that it intends to comply with future regulations and may have to modify restaurants in the future by adding accessibility features;

m)   Defendant's corresponding practice stated directly above is to outright deny any responsibility to make modifications to practices and policies as well as repairs to barriers, unless demanded by the disabled;

n)   Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

39. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

40. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facilities as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Redlands Grill and Stoney River, as described above in detail.

41. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

42. Defendant's utter failure to abide by ADA Title III is remarkably admitted by the corporation itself in its SEC filings. Item 503(c), 17 CFR 229.503 of SEC regulation 10-K requires disclosures of material risk factors, which will set forth possible circumstances or situations making investment risky or speculative. J. Alexander's

in its 10-K literally lists ADA litigation as such a material risk! Such legal, institutional recognition of the magnitude of its ADA Title III problems indicates knowledge of intentional policies, or at a minimum, consistent insititutional practices of ADA Title III non-compliance.

43.   Moreover, given prior contact with J. Alexander's, and, independently, J. Alexander's regulatory acknowledgement that it has ADA Title III issues of such a magnitude that those problems might well serve as a material risk to investors, it is clear that to provide pre-suit notice, or further pre-suit notice of ADA practice and policy violations is futile. The ADA and its implementing regulations provide that Plaintiff need not engage in the futile act of presuit notice of policies and practices violations when Plaintiff has actual notice Defendant does not intend to comply with the Act, in order to have standing. In support of this, Plaintiff provides the following:

   a)   42 U.S.C.  Section §12188 (a) (1) provides, "*nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.*"

   b)   28 C.F.R. §36.501 provides "*nothing in this section shall require a person with a disability to engage in a futile gesture if the person has actual notice that a person or organization covered by title III of the act or this part does not intend to comply with its provisions.*"

44.   To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges,

advantages, or other accommodations to individuals with disabilities.

45.    A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's establishments consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Redlands Grill and Stoney River; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

46.    As pled above J. Alexander's Restaurants, LLC, "operates" and "leases" the Redlands Grill restaurant located at 2670 N Germantown Pkwy, Memphis, TN 38133 and the Stoney River restaurant located at 7515 Poplar Ave #101, Germantown, TN 38138, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

47.    The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

48.    By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

49. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

50. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

### COUNT THREE
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

51. Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

52. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

53. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

54. Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices,*

*exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

55.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

56.   The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

57.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is

not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

58.   Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

59.   To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

60.   For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

61.   The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience*. <u>Spector v.  Norwegian Cruise Line Ltd.,</u> 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, <u>Baughman v.  Walt Disney World Company</u>, 685 F.3D 1131, 1135 (9th Cir. 2012).

62.   Plaintiff John Smith, was denied full and equal access to Redlands Grill and Stoney River. Plaintiff specifically and definitely wants to return to the Defendant's restaurants to enjoy its boutique-style that focus on providing high quality food, outstanding professional service and an attractive ambiance. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant's failure to provide Plaintiff the same chef-driven, boutique-style restaurant emphasizing high-quality food and professional service dining experience by Redlands Grill's ablest use of its seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same chef-driven, boutique-style

restaurant emphasizing high-quality food and professional service dining experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the chef-driven, boutique-style restaurant emphasizing high-quality food and professional service dining experience; Defendant's failure to provide Plaintiff the same experience at the bar by failing to provide any bar counter that conforms to the ADA design standards, which means Plaintiff cannot enjoy the experience of ordering drinks at the bar, happy hour at the bar, watching sporting events on the TV's at the bar, viewing and selecting the assortment of on-tap beer selection, viewing and selecting the outstanding selection of wines, or any other benefit or service able-bodied individuals get to enjoy when sitting at the bar counter; Defendant failed to provide an accessible indoor dining area for disabled individuals, which means Plaintiff cannot independently use and dine in the indoor dining area; Defendant failed to provide an accessible outdoor dining area for disabled individuals, which means Plaintiff cannot independently use and dine in the outdoor dining area; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the hostess service counter, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide the same experience by making the seating in the waiting area inaccessible for use by the disabled, which means that Plaintiff cannot independently use or access the waiting area seating to sit and relax while waiting to be seated at a table, which the able-bodied are able to independently use;

Defendant failed to provide an accessible restroom for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and prohibited from using all the other elements of the restroom; Defendant fails to provide an accessible entrance to Stoney River so that Plaintiff and other disabled individuals are outright denied the opportunity to even enter the restaurant to experience the finest culinary experience that exceeds your expectations that able-bodied individuals are able to enjoy; Defendant's failure to provide Plaintiff the same finest culinary experience that exceeds your expectations by Stoney River's ablest use of its seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same finest culinary experience that exceeds your expectations that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the finest culinary experience that exceeds your expectations; Defendant's failure to provide Plaintiff the same experience at the bar by failing to provide any bar counter that conforms to the ADA design standards, which means Plaintiff cannot enjoy the experience of ordering drinks at the bar, happy hour at the bar, watching sporting events on the TV's at the bar, viewing and selecting the assortment of on-tap beer selection, viewing and selecting the outstanding selection of wines, or any other benefit or service able-bodied individuals get to enjoy when sitting at the bar counter;

Defendant failed to provide an accessible dining area for disabled individuals, which means Plaintiff cannot independently use and dine in the dining area; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the hostess service counter, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide the same experience by making their patio area and seating in the patio area inaccessible for use by the disabled, which means that Plaintiff cannot independently use or access the patio area seating to sit and relax while at the establishment, which the able-bodied are able to independently use; Defendant failed to provide an accessible restroom for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and prohibited from using all the other elements of the restroom; Defendant's failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; the Plaintiff is denied the opportunity to use the website to find J. Alexander's branded restaurants, which literally acts to deny the entire experience to the client unless the client knows where the restaurants are already; the plaintiff is denied the opportunity to make reservations through the website, so that the opportunity to plan and to confirm going to the restaurants is denied to the Plaintiff, as well as the certainty of being able to enjoy the experience provided by the reservation;  the address, hours of operation, and menu information

from the website are denied to the Plaintiff, who cannot access or use that information; and the use of the website to purchase giftcards, and check the balance of the giftcards is also denied to the Plaintiff, again creating a different and inferior, segregated experience for the disabled; Defendant's continued failure to maintain ADA accessibility as an integral part of the boutique-style restaurants that focus on providing high quality food, outstanding professional service and an attractive ambiance dining experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Redlands Grill and Stoney River makes Plaintiff dependent on family or an independent third party which is not the same boutique-style restaurants that focus on providing high quality food, outstanding professional service and an attractive ambiance dining experience that these establishments afford to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Redlands Grill or Stoney River.

63. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

64. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

65. Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. *"The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected*." *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

66.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Redlands Grill and Stoney River.

67.   Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

68.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facilities. 28 C.F.R.§ 36.211(a).

69.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

70.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facilities for ADA compliance)*

**71.**   Plaintiff incorporates by reference and re-alleges all of the paragraphs above.

**72.**   42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

**73.**   Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

74. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same  services that  are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id*.

75. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

76. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

77.   Defendant, J. Alexander's Restaurants, LLC, "operates" and "leases" the Redlands Grill restaurant located at 2670 N Germantown Pkwy, Memphis, TN 38133 and the Stoney River restaurant located at 7515 Poplar Ave #101, Germantown, TN 38138 and is directly involved in the designing and/or construction of its establishments in this litigation for first occupancy after January 1993.

78.   Defendant was and is required to design and construct the Redlands Grill and Stoney River establishments to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its establishments to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its establishments in compliance with the ADA during planned alterations as described throughout this Complaint.

79.   According to Defendant's own publicly available information, Defendant chose to design its establishments in a way that is not ADA Title III compliant whatsoever. In an attempt to avoid making its services and associated elements accessible to the disabled until demanded by the disabled to make the repairs, Defendant literally strategically designs each one of its establishments without any regard to the disabled and states in its own company annual filings that Defendant knows its establishments and associated elements will need to be redesigned to comply with the ADA. Defendant's systematic design of its establishments fails to afford disabled individuals the dining and entertainment experience that is afforded to individuals without disabilities.

80. To date, the Defendant's discriminating actions continue.

81. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

82. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, John Smith demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter the facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendant to provide Plaintiff full and

equal access both to the Redlands Grills and Stoney River experience and to the use of the establishments, and further order Defendant to maintain the required accessible features at the establishments so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow it to undertake and complete corrective procedures;

6.   That the Court enjoin Defendant to remediate the Redlands Grill and Stoney River establishments to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four;

7.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 17th Day of August, 2018.

/s/*Bradley D. McAdory*
**BRADLEY D. MCADORY**
**BPR # TN-018112**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.521.3859 f
Email: BDM@ADA-Firm.com
*Attorney for the Plaintiff*

*/s/ L. Landis Sexton*
      **L. LANDIS SEXTON**
      **BPR # AL-5057N71L**
      The ADA Group LLC
      4001 Carmichael Road, Suite 570
      Montgomery, Alabama 36106
      334.819.4030 p
      334.521.3859 f
      LLS@ADA-Firm.com
      *Attorney for the Plaintiff*

*/s/Tracy G. BirdSong*
      **Tracy G. BirdSong**
      **BPR # AL-2170D64T**
      The ADA Group LLC
      4001 Carmichael Road, Suite 570
      Montgomery, Alabama 36106
      334.819.4030 p
      334.521.3859 f
      TGB@ADA-Firm.com
      *Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 17th day of August, 2018 to the following:

**J. ALEXANDER'S RESTAURANTS, LLC**
c/o C T Corporation System
attn.: Registered Agent
300 Montvue Rd
Knoxville, TN 37919-5546

*/s/Bradley D. McAdory*
**BRADLEY D. MCADORY**
**BPR # TN-018112**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.521.3859 f
Email: BDM@ADA-Firm.com
*Attorney for the Plaintiff*